UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Eric Lopez,

      *Plaintiff,*

    v.

Corozal Auto Repair Inc, et al.,

      *Defendants.*

Civil Action No. 21-cv-17366 (MEF)(MAH)

OPINION and ORDER

I.   Background
    A.   Facts
    B.   The Complaint
    C.   The Summary Judgment Motions
    D.   The Court's Approach
II.  General Legal Principles
    A.   Summary Judgment
    B.   Substantive Law
    C.   The New Jersey Workmen's Compensation Act
        1.   In General
        2.   Interpretive Principles
        3.   The Intentional Wrong Exception
III. Analysis
    A.   Drip Pan
    B.   Windshield Washer Fluid
    C.   Fire Suppression Equipment
IV.  Conclusion

\*     \*     \*

An employee was injured on the job.

He sued, among others, the auto repair shop where he worked and the shop's owner.

The shop and its owner argue the lawsuit is barred by the New Jersey Workmen's Compensation Act, and have accordingly moved for summary judgment.

The employee has also moved for summary judgment.

The employee's motion is denied.  The repair shop's motion is denied.  The shop owner's motion is granted.

*     *     *

I.   <u>Background</u>

 A.   <u>Facts</u>

The relevant facts, for now, are as follows.[1]

A mechanic worked for an auto repair shop.  <u>See</u> Defendants' Statement of Facts (July 5, 2023) ("Defendants' Statement of Facts") ¶ 1; Plaintiff's Statement of Facts (July 28, 2023) ("Plaintiff's Statement of Facts") ¶¶ 1-2.

While he was at work, a fire broke out and it spread to him. <u>See</u> Defendants' Statement of Facts ¶¶ 7-8; Plaintiff's Statement

---

[1]  The Local Rules require the "opponent of summary judgment [to] furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the . . . documents submitted in connection with the motion[.]" Local Rule 56.1(a).  Neither party followed this Rule.  <u>See</u> Plaintiff's Counter-Statement of Material Facts (July 28, 2023) (failing to address the paragraphs in the Defendants' Statement of Material Facts); Defendants' Letter (March 20, 2024) (indicating their own motion for summary judgment serves as their opposition to the Plaintiff's motion).  This has led to delay, but the Court compared the parties' statements of facts and sifted through the record, to the extent made available by the parties, to determine whether any fact was disputed. Proceeding in this way is permissible.  <u>See</u> <u>Veverka</u> v. <u>Royal Caribbean Cruises Ltd.</u>, 649 F. App'x 162, 167 (3d Cir. 2016).

of Facts ¶¶ 4-5.  The mechanic was badly injured.  <u>See</u>
Defendants' Statement of Facts ¶¶ 7, 10; Plaintiff's Statement
of Facts ¶¶ 4-5, 9.

### B.   The Complaint

The mechanic (from here "the Plaintiff"[2]) filed this lawsuit.

He sued multiple defendants, including the auto repair shop he
worked for and its owner.

The Plaintiff's core allegation: the auto repair shop ("Auto
Repair Shop"[3]) and its owner ("Shop Owner"[4]) are responsible for
his injuries because of the Shop Owner's actions just before and
during the fire, and because the Auto Repair Shop was not in
compliance with a governing fire code.  <u>See</u> Amended Complaint
(Feb. 8, 2022) ("Complaint") ¶¶ 40, 42-45; Memorandum of Law in
Support of Plaintiff's Motion for Partial Summary Judgment
Against Defendants, Corozal Auto Repair, Inc., A&A Corozal Auto
Repair, LLC, and Alexander Santiago and Alexander Corozal (July
28, 2023) ("Plaintiff's Motion") at 1-4.

The Auto Repair Shop and the Shop Owner are referred to from
here, collectively, as "the Defendants."

### C.   The Summary Judgment Motions

Discovery was undertaken and completed, and motions for summary
judgment have been filed, one by the Plaintiff and one by the
Defendants.

The Defendants' summary judgment argument: the New Jersey
Workmen's Compensation Act provides the Plaintiff with his only
remedy ——— unless the Defendants committed an "intentional

---

[2]   The mechanic-Plaintiff is Eric Lopez.  <u>See</u> Defendants'
Statement of Facts ¶ 1; Plaintiff's Statement of Facts ¶ 1.

[3]   The formal name of the Auto Repair Shop is not
straightforward.  That is taken up briefly in Part IV.

[4]   The Shop Owner is Alexander Santiago a/k/a Alex Corozal.  <u>See</u>
Defendants' Statement of Facts ¶ 2; Plaintiff's Statement of
Facts ¶ 3.  This lawsuit separately named "Alexander Santiago"
and "Alex Corozal" as defendants.  <u>See</u> Complaint ¶¶ 4-6.  But
the Plaintiff says these are the same person, <u>see</u> Plaintiff's
Statement of Facts ¶ 3, and the Defendants do not dispute that.

wrong," which, the argument goes, they did not.  See Defendant, A&A Corozal Auto Repair, LLC and Alexander Santiago's Brief in Support of Motion for Summary Judgment (July 5, 2023) ("Defendants' Motion") at 1–2.

The Plaintiff's response: the Defendants committed an intentional wrong, and so the New Jersey Workmen's Compensation Act gives way and the Plaintiff may press this lawsuit against the Defendants.  See Plaintiff's Motion at 1, 4.

The summary judgment motions are now before the Court.

### D.   The Court's Approach

To analyze the motions, the Court starts by laying out the relevant legal principles, including those that concern the intentional wrong provision of the New Jersey Workmen's Compensation Act.  See Part II.

Next, the Court takes up the three purported intentional wrongs identified by the Plaintiff.  The Court's conclusion: under New Jersey law, none of these count as an intentional wrong. Therefore, the New Jersey Workmen's Compensation Act bars the Plaintiff's lawsuit.  See Part III.

The implications of this are considered in Part IV, which explains that the Plaintiff's motion for summary judgment is denied, and the Defendants' motion is granted as to the Shop Owner and, at least for now, denied as to the Auto Repair Shop. See Part IV.

## II.  General Legal Principles

### A.   Summary Judgment

Motions for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023); Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 100 (3d Cir. 2023).

"A factual dispute is material if it might affect the outcome of the suit under the governing law." Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Such a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-204 (3d Cir. 2022).

In assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence[.]" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). Rather, the court must "view the facts in the light most favorable to the non-moving party and [draw] all reasonable inferences in that party's favor." Canada, 49 F.4th at 345 (cleaned up); accord Tolan v. Cotton, 572 U.S. 650, 660 (2014).

### B.   Substantive Law

The Complaint invokes the New Jersey Workmen's Compensation Act, see ¶¶ 34-38, 40-45, and causes of action under New Jersey common law. See id.

The parties do not dispute that New Jersey's law is in play, and their briefs invoke New Jersey law throughout. See Defendant's Motion at 1, 8; Plaintiff's Motion at 1, 5-6.

Accordingly, the Court will apply New Jersey law. See Smith v. CitiMortgage, Inc., 2023 WL 7619155, at *3 (D.N.J. Nov. 14, 2023); Marino v. Brighton Gardens of Mountainside, 2023 WL 6366013, at *2 (D.N.J. Sept. 29, 2023); TekDoc Servs., LLC v. 3i-Infotech Inc., 2013 WL 2182565 at *10 n.12 (D.N.J. May 20, 2013) (quoting Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000)) ("Where parties' briefs assume that a particular forum's law controls, 'such implied consent . . . is sufficient to establish choice of law.'").

### C.   The New Jersey Workmen's Compensation Act

As noted, see Part I.C, the core dispute between the parties is whether the intentional wrong exception to the New Jersey Workmen's Compensation Act (1) applies, in which case the Plaintiff's lawsuit can go forward, or (2) does not apply, in which case the lawsuit cannot proceed.

Given this, some brief background follows: on the Act, see Part II.C.1; on how it is generally interpreted by New Jersey's courts, see Part II.C.2; and on how, in particular, those courts

have interpreted the Act's intentional wrong exception, see Part II.C.3.

### 1.    In General

The New Jersey Workmen's Compensation Act provides that "compensation for personal injuries to . . . [covered] employee[s] by accident arising out of and in the course of employment shall be made by the employer without regard to the negligence of the employer, according to the schedule [set out in the Act]."  N.J. Rev. Stat. § 34:15-7.

This remedy is exclusive.  It displaces all other private remedies.  Coverage under the Act is "a surrender by the parties . . . of their rights to any other method, form or amount of compensation [other] . . . than as provided in [the Act.]"  N.J. Rev. Stat. § 34:15-8.

The New Jersey Supreme Court has referred to the just-quoted language as the Act's "exclusive-remedy provision," Van Dunk v. Reckson Assocs. Realty Corp., 210 N.J. 449, 459 (2012), and has described it as embodying a "historic trade-off whereby employees relinquished their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffered injuries by accident arising out of and in the course of employment."  Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 174 (1985).

But the New Jersey Workmen's Compensation Act is exclusive only where it applies.

And it does not apply where there has been an intentional wrong. The relevant part of the Act:

> [A] person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

N.J. Rev. Stat. § 34:15-8; see also Van Dunk, 210 N.J. at 459.

### 2.    Interpretive Principles

In interpreting the New Jersey Workmen's Compensation Act, this Court's role is to apply the law as the New Jersey Supreme Court has set it out.  See Spence v. ESAB Grp., Inc., 623 F.3d 212,

216 (3d Cir. 2010); Schulman v. Zoetis, Inc., 2023 WL 4539476, at *1 (D.N.J. July 14, 2023).

If the New Jersey Supreme Court has not answered a particular legal question, this Court must predict how the Supreme Court would answer it. See Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A., 2024 WL 1819645, at *1 (3d Cir. Apr. 26, 2024); Schulman, 2023 WL 4539476, at *1.

Accurate prediction requires following the interpretive approach the state supreme court has chosen as to the particular area of state law that is on the table. See Schulman, 2023 WL 4539476, at *5 n.5.

As to the Workmen's Compensation Act, the New Jersey Supreme Court's interpretive approach has been clear: the Act must be broadly construed in favor of bringing workers within its coverage --- as opposed to a more narrow interpretation of the Act, that would lead to workers not being covered and therefore being permitted to seek a remedy outside of the Act, through an ordinary tort suit. See, e.g., Naseef v. Cord, Inc., 48 N.J. 317, 325–26 (1966) ("Consistent with its humanitarian ideals, [the] Workmen's Compensation Act has always been liberally construed in favor of coverage."); Fitzgerald v. Tom Coddington Stables, 186 N.J. 21, 30 (2006) (the Act is "remedial social legislation" that "should be given liberal construction in order that its beneficient purposes may be accomplished") (cleaned up); see also Jarosz v. G & B LLC, 2013 WL 5268926, at *3-4 (N.J. Super. Ct. App. Div. Sept. 19, 2013) ("[T]he goal of the [New Jersey Workmen's Compensation Act] is to provide compensation to injured workers for as many work-related injuries as possible[.]") (cleaned up); Kaczorowska v. Nat'l Envelope Corp., 342 N.J. Super. 580, 587 (App. Div. 2001) ("[I]ts underlying principle [is] to process as many work-related disability claims as possible exclusively within the Act[.]").

### 3.   The Intentional Wrong Exception

In keeping with the New Jersey Supreme Court's overarching admonition to "construe[] [the Act] in favor of coverage," Fitzgerald, 186 N.J. at 31 (quoting Naseef, 48 N.J. at 325–26), New Jersey courts have held the Act's "'intentional wrong' exception must be narrowly construed." Jarosz, 2013 WL 5268926 at *3.

As the New Jersey Supreme Court has put it: "if 'intentional wrong' is interpreted too broadly, this single exception would swallow up the entire 'exclusivity' provision of the Act[.]" Millison, 101 N.J. at 177; see also Mabee v. Borden, Inc., 316 N.J. Super. 218, 226–27 (App. Div. 1998) ("[T]he 'intentional wrong' exception . . . must be interpreted very narrowly . . . so that as many work-related disability claims as possible be processed exclusively within the workers' compensation system.").

Against the backdrop note two parts of the legal landscape.

First, the party seeking to invoke the "very narrow[]," id., intentional wrong exception bears the burden of establishing it. See, e.g., Spatola v. Seabrook Bros. & Sons, Inc., 2019 WL 2004311, at *3 (N.J. Super. Ct. App. Div. May 7, 2019); Fendt v. Abrahams, 2013 WL 1405096, at *5 (N.J. Super. Ct. App. Div. Apr. 9, 2013).

And second, note the New Jersey Supreme Court's strict and limited understanding of what counts as "intentional" and what counts as a "wrong."

As to the former, the New Jersey Supreme Court has read into the Act Dean Prosser's "substantial certainty" standard for understanding what is meant by an intentional wrong.

> The mere knowledge and appreciation of a
> risk --- something short of substantial
> certainty --- is not intent.  The defendant
> who acts in the belief or consciousness that
> the act is causing an appreciable risk of
> harm to another may be negligent, and if the
> risk is great the conduct may be
> characterized as reckless or wanton, but it
> is not an intentional wrong.

Millison, 101 N.J. at 177 (quoting W. Prosser and W. Keeton, The Law of Torts, § 8 at 36 (5th ed. 1984)); see generally id. ("[T]he quid pro quo of workers' compensation . . . can best be preserved by applying the 'intent' analysis of Dean Prosser to determine what is an 'intentional wrong' within the meaning of the Act.").

Per the New Jersey Supreme Court, the "substantial certainty" standard of intent "foreclose[s] tort actions against employers for reckless or gross negligence."  Van Dunk, 210 N.J. at 474;

8

see also Rodriguez v. Shelbourne Spring, LLC, 2023 WL 8868415, at *6 (N.J. Super. Ct. App. Div. Dec. 22, 2023) ("Even an injury caused by either gross negligence or an abysmal lack of concern for the safety of employees is insufficient to satisfy the 'intentional wrong' exception.") (cleaned up).

As to what amounts to an intentional wrong for the purposes of the Act, the New Jersey Supreme Court has said:

> [c]ourts must examine not only the conduct of the employer, but also the context in which that conduct takes place: may the resulting injury or disease, and the circumstances in which it is inflicted on the worker, fairly be viewed as a fact of life of industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the Compensation Act?

Millison, 101 N.J. at 179.

The New Jersey Supreme Court has knitted together the "substantial certainty" standard for intent with the "fact of [industrial] life" inquiry --- and generated a two-pronged test for determining when the intentional wrong exception applies.

The test:

> (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.

Richter v. Oakland Bd. of Educ., 246 N.J. 507, 536 (2021), as modified (June 15, 2021) (cleaned up).

The Supreme Court has labeled the first part of the test the "conduct prong," and the second part of the test the "context prong." Van Dunk, 210 N.J. at 461-62.

9

And it has made clear that the conduct prong, which is the focus here, see Part III, is exceedingly demanding:

> [T]he dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the Act is not circumvented simply because a known risk later blossoms into reality.  We must demand a virtual certainty.

Millison, 101 N.J. at 178.

## III. **Analysis**

The Plaintiff argues that three sets of actions by the Defendants each count as an intentional wrong.[5]

Take these in turn.

### A.    **Drip Pan**

To analyze the first set of actions, related to a drip pan, zero in more closely on the undisputed facts here.

At the Auto Repair Shop, gas was dripping from a car that was to be fixed.  See Defendants' Statement of Facts ¶ 7 (citing Eric Lopez's Deposition (Dec. 6, 2022) ("Lopez Dep.") at 31:14-32:7); Plaintiff's Statement of Facts ¶ 4; Lopez Dep. at 33:11-24; Alex Corozal-Santiago's Deposition (Apr. 21, 2023) ("Santiago Dep.") at 22:20-22.

---

[5]  The parties do not suggest that the Auto Repair Shop and the Shop Owner should be treated separately here.  Rather, the parties proceed as if the actions of the Auto Repair Shop and the Shop Owner should be imputed to each for present purposes. This is likely because of the background principle that "whenever . . . the employer is a corporation, the employer can act only through its employees, so for practical purposes actions taken by certain corporate officers and supervisors are actions taken by the corporate-employer." Millison, 101 N.J. at 185.  The Auto Repair Shop, subject to Part IV below, was the Plaintiff's employer.  And the Shop Owner worked at the Auto Repair Shop, and alongside the Plaintiff on the day of his injury.  Following the parties' lead, the Court treats the Shop Owner's acts as chargeable to the Auto Repair Shop, and vice versa.

The Shop Owner responded by putting a drip pan under the car. See Defendants' Statement of Facts ¶ 7; Plaintiff's Statement of Facts ¶ 9; Lopez Dep. at 33:11-24.

The next day, the Shop Owner asked the Plaintiff to help him push the car into one of the Auto Repair Shop's garage bays. See Defendants' Statement of Facts ¶ 2; Plaintiff's Statement of Facts ¶ 4.

While the men were pushing the car, a spark, apparently from the jack propping up the car, touched off a fire. See Defendants' Statement of Facts ¶ 7; Plaintiff's Statement of Facts ¶¶ 4, 9.

The fire spread to the Plaintiff. See Defendants' Statement of Facts ¶ 7; Plaintiff's Statement of Facts ¶¶ 4, 9. The Plaintiff was badly burned. See Defendants' Statement of Facts ¶¶ 8, 10; Plaintiff's Statement of Facts ¶ 4.

The Plaintiff asserts that the Shop Owner's placement of the drip pan under the car to collect the leaking gas was an intentional wrong. See Plaintiff's Motion at 7.

But this argument runs aground on the New Jersey Supreme Court's interpretation of the Workmen's Compensation Act.

As noted above, the test for determining whether an act is an "intentional wrong" is in two parts. See Part II.C.2.

To satisfy the first part, "the employer must know that his actions are substantially certain to result in injury or death to the employee." Van Dunk, 210 N.J. at 462

The Plaintiff's "know[ledge]" argument here is that "[c]learly" using a pan to collect gas drippings "created a danger of fire." Plaintiff's Motion at 7.

But knowing that placing a drip pan creates "a danger of fire" is not the same as knowing that placing a drip pan creates a "substantial certainty" of injury or death.

This is for two reasons.

First, not all fires lead to injury or death.

And second, knowing there is a risk ("a danger") does not mean knowing there is a very large risk (a "substantial certainty"). Indeed, the New Jersey Supreme Court has held that "mere knowledge and appreciation of a risk" --- which is all the Plaintiff argues here --- is simply not enough. Millison, 101

11

N.J. at 177.  Put differently, invoking "a danger of fire," as the Plaintiff does, see Plaintiff's Motion at 7, is to note there was some likelihood of fire, whatever that likelihood might turn out to be.  But the New Jersey Supreme Court has held this is not enough.  "[S]ome level of a 'likelihood' of injury or death is not substantial certainty of injury or death."  Van Dunk, 210 N.J. at 472; see also Tomeo v. Thomas Whitesell Const. Co., 176 N.J. 366, 371 (2003) ("[S]imply being aware of the risk of harm does not equate to having knowledge of a substantial certainty of harm.").

What might move the needle, toward the level of knowledge ("substantial certainty") that is required here?

The New Jersey Supreme Court has provided examples --- evidence of "prior close-calls," prior complaints to management, or "guilty knowledge" as revealed by "deliberate and systematic" efforts to deceive safety regulators.  Laidlow v. Hariton Mach. Co., 170 N.J. 602, 622 (2002).

But the Plaintiff does not point to evidence along these lines.

Moreover, what is in the record does not, on its own, support an inference of an intentional wrong.  If anything, the opposite.

To see why, note that the Shop Owner was pushing the car together with the Plaintiff.  See Defendants' Statement of Facts ¶¶ 2, 4-6; Plaintiff's Statement of Facts ¶¶ 4-5.  And an errant spark could just as easily have caused a fire to leap on to the Shop Owner as the Plaintiff.  If the Shop Owner thought it was "substantially certain" that injury or death could result from pushing the car with a drip pan underneath it --- why was he himself pushing it?

Bottom line: at this stage, the Plaintiff must "make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."  SodexoMAGIC, LLC, 24 F.4th at 204 (cleaned up).  But he has not done so.  The Plaintiff does not point to evidence that in placing the drip plan under the car, or later pushing it, the Shop Owner "kn[e]w that his actions [we]re substantially certain to result in injury or death to the [Plaintiff]."  Van Dunk, 210

N.J. at 462.  But that is what the New Jersey Supreme Court requires to establish an intentional wrong.[6]

### B.   Windshield Washer Fluid

The Plaintiff's next argument: the Shop Owner committed an intentional wrong when he poured windshield washer fluid on the Plaintiff.  See Plaintiff's Motion at 7-8.

The relevant facts: the fire under the car spread to the Plaintiff and he caught on fire.  See Defendants' Statement of Facts ¶ 8; Plaintiff's Statement of Facts ¶¶ 4, 9.  The Shop Owner then quickly grabbed a nearby container of liquid (it turned out to be windshield washer fluid) and poured it on the Plaintiff.  See Defendants' Statement of Facts ¶ 9; Plaintiff's Statement of Facts ¶¶ 5, 9; Santiago Dep. at 25:3-13, 23:8-19. The Plaintiff "burst into flames" as a result.  See Plaintiff's Statement of Facts ¶ 5 (citing Lopez Dep. 31:10-13).[7]

---

[6]  Because the first prong of the test is dispositive, the Court does not consider its second prong.  The second prong, as noted in Part II.C.2, looks to "the context in which . . . conduct takes place."  Millison, 101 N.J. at 179.  But that could also potentially be a difficult hurdle to clear here, because "the dangers of working with a flammable liquid are well-known to those who repair cars, and [an accident involving flammable liquid] is a fact of life for this type of industrial employment --- not one which the Legislature never planned to immunize." Mechin v. Carquest Corp., 2010 WL 3259808, at *9 (D.N.J. Aug. 17, 2010) (analyzing New Jersey Workmen's Compensation Act)

[7]  There is some disagreement as to whether there were two gallons of windshield washer fluid or one.  Compare Plaintiff's Statement of Facts ¶ 9 (two gallons) with Santiago Dep. 23:14-22 (one).  But this is not material.  In addition, there have been at various points in the litigation different assertions about whether the windshield washer fluid in question included antifreeze chemicals (which are flammable to a degree), or was just blue-tinted water (which is presumably not flammable). Compare Santiago Dep. 30:2-23 (blue water) with Lopez Dep. 38:3-24 (antifreeze).  But the parties all now agree that the fluid included an antifreeze component.  See Defendants' Statement of Facts ¶ 9; Plaintiff's Statement of Facts ¶¶ 5, 20.

To assess whether this adds up to an intentional wrong, start as before --- with the first prong of the test set out by the New Jersey Supreme Court.  Namely, is there evidence the Shop Owner "kn[e]w that his actions [we]re substantially certain to result in injury or death to the employee"?  See Van Dunk, 210 N.J. at 462 (cleaned up).

The Court's conclusion: no.

The evidence is that when the Plaintiff caught on fire, the Shop Owner "panic[ked]," Defendants' Statement of Facts ¶ 9, and grabbed a nearby liquid hoping to put out the fire.  See Santiago Dep. 23:8-19 ("I was trying to take off his shirt, but he was just running all over the place."); Santiago Dep. at 25:3-13 ("I just saw the . . . liquid, and he ran inside and that's what was next to me, that was the closest thing next to me[.]"); Santiago Dep. at 24:6-9 ("I grabbed [the liquid] and I just poured it over him once the fire, you know, it turned off, I ripped off his shirt and . . . that's how everything happened.").

All of this suggests an effort to provide quick assistance in an emergency.

And that is all-but the opposite of what the Plaintiff must show here --- that the Shop Owner "kn[e]w" that pouring the liquid on the Plaintiff was "substantially certain" to injure or kill him.

No evidence supports this interpretation of events.  There is no hint, for example, of a grudge or other inter-personal strains from which it might conceivably be inferred that the Shop Owner "kn[e]w" that he would injure the Plaintiff by stoking the fire and making it worse.[8]

Rather, as noted above, the only evidence here is of a split-second decision to fight a fire with near-at-hand liquid --- that turned out to be flammable.

---

[8]  The intentional wrong exception does not require an intent to injure, only knowledge that injury (or death) is "substantially certain" to occur.  Intent and knowledge are ordinarily (and starkly) different in this context.  See Laidlow, 170 N.J. at 613.  But they run together to an extent on the facts of this case.

That may have been a mistake, and it may have been negligent.[9]

But no proof suggests the Shop Owner "kn[e]w" that dousing the burning Plaintiff with windshield wiper fluid was "substantially certain" to make things worse than they already were --- let alone "substantially certain to result in [the Plaintiff's] injury or death." Van Dunk, 210 N.J. at 462 (cleaned up).

Against this conclusion, the Plaintiff presses two arguments.

First, the Plaintiff points to an expert report, which states that the "washer fluid in question . . . [was] a Category 3 flammable liquid. Using this washer fluid to extinguish [the Plaintiff] would have had the opposite affect and to a substantial certainty escalated the fire." Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Docket Entry 80), Exhibit H, Expert Report of Douglas D. Miller (Docket Entry 80-9) ("Miller Report") at 3.[10]

This may be so. But it does not purport to shed light on what it must --- the knowledge of the Shop Owner. See generally Van Dunk, 210 N.J. at 462 ("[T]he employer must know that his actions are substantially certain to result in injury or death to the employee.") (cleaned up).

An expert opinion that spoke, for example, to what experienced auto mechanics generally know about the properties of various windshield wiper fluids might potentially have altered the picture. But no such opinion was offered here.

---

[9] Whether it was depends in part on evidence and arguments the Plaintiff has not put before the Court --- about how much antifreeze the windshield wiper fluid contained, for example, and about whether on balance it is safer to let someone burn than to try to put out the fire even when the available liquid contains some amount of flammable chemicals.

[10] This expert report appears to be the one cited in the Plaintiff's summary judgment motion. But it is not attached to it. Rather, the Court reviewed the full docket and discovered the expert report filed with the Plaintiff's motion for summary judgment as made against a different defendant. The Court assumes that report is the one the Plaintiff now cites in the current summary judgment motion.

15

Second, the Plaintiff seems to suggest the Shop Owner, given his experience, should have known the liquid was flammable. See Plaintiff's Motion at 8.

But the New Jersey Supreme Court has made clear that "should have known" is not enough for the New Jersey Workmen's Compensation Act. See Laidlow, 170 N.J. at 612 ("intentional wrong in [the] compensation statute . . . is not equatable with gross negligence or similar concepts importing constructive intent") (cleaned up).

Indeed, the New Jersey Supreme Court has suggested that any level of intent short of "virtual certainty" does not clear the "intentional wrong" bar. Million, 101 N.J. at 178; Van Dunk, 210 N.J. at 474; Rodriguez, 2023 WL 8868415, at *6 ("Even an injury caused by either gross negligence or an abysmal lack of concern for the safety of employees is insufficient to satisfy the 'intentional wrong' exception.") (cleaned up).

And no evidence here weighs in favor of a "virtual certainty" conclusion.

At this stage of the litigation, that is dispositive. Discovery has come and gone. The Plaintiff cannot show what he now must as to the Shop Owner's knowledge solely by making assertions about what the Shop Owner must have known or should have known. Those assertions are not evidence. They could not be put before a jury. See Bacon v. Avis Budget Grp., Inc., 959 F.3d 590, 603 (3d Cir. 2020) (cleaned up) ("Facts supporting summary judgment must be capable of being presented in a form that would be admissible in evidence."); Fed. R. Civ. P. 56(c)(2). Therefore, the assertions cannot satisfy the Plaintiff's obligation to "make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial[.]" SodexoMAGIC, LLC, 24 F.4th at 204 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

To be sure, assertions about what a party knew can sometimes be persuasive enough at the summary judgment stage --- as, for example, when they draw from and interpret evidence as to the broader circumstances at issue.

But that is not the case here. There is simply nothing in the record that begins to suggest that when the Shop Owner tried to douse the burning Plaintiff he was actually taking a step that

he "kn[e]w" to a "substantial certainty" would injure or kill him.

In the absence of such evidence, the argument that the Shop Owner must have had such knowledge is left out on a limb --- as bare standalone argument, not as an interpretation of the evidence.  That cannot satisfy the Plaintiff's obligation to come forward with evidence.  See Celotex Corp., 477 U.S. at 325 ("[T]he burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact[.]"); Mahmoud v. City of Paterson, 611 F. App'x 95, 97 (3d Cir. 2015) ("If the moving party can make . . . a showing [that there is an absence of evidence to support the non-moving party's case], then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists."); Suber v. Wright, 574 F. App'x 207, 210 (3d Cir. 2014) ("[T]o defeat a motion for summary judgment, the nonmovant must 'supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant.'") (cleaned up); Witco Corp. v. Beekhuis, 38 F.3d 682, 686 (3d Cir. 1994) ("[T]he mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue.").

Bottom line: the New Jersey Supreme Court has held that even "a quick but extremely poor decision" does not constitute an intentional wrong, Van Dunk, 210 N.J. at 471, even when it "blossom[s] . . . into serious bodily harm for [the] plaintiff." Id. at 472.  And that, at most, is what is alleged here.[11]

## C.   Fire Suppression Equipment

The Plaintiff's third and final intentional wrong: lack of "proper fire suppression equipment," in violation of relevant fire codes.  See Plaintiff's Motion at 8-9.[12]

---

[11]  Again, because the first prong of the two prong test is dispositive, the Court does not conduct an analysis of the second.  See generally Part II.C.3.

[12]  Two points.  First, the Complaint alleges "there was no fire extinguisher or other fire prevention equipment" at the Auto Repair Shop.  See Complaint ¶ 12.  But the evidence shows at least one fire extinguisher.  Per the Plaintiff's deposition: "I

Establishing such a claim in New Jersey typically requires expert testimony.  See Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 409 (2014); Nicolas v. Riverview Towers Apartment Corp., 2014 WL 7797081, at *2 (N.J. Super. Ct. App. Div. Feb. 12, 2015).

And the Plaintiff submitted an expert report from an occupational safety consultant.  See Miller Report.

The consultant's main conclusion: the New Jersey Fire Code requires "repair garages" of the type at issue here to have fire extinguishers at a "maximum travel distance" of 30-50 feet, see id. at 3, and the single fire extinguisher he observed in the Auto Repair Shop was not enough.  See id. at 4.  At least one more extinguisher was needed.  See id. at 3 ("Due to the automotive lifts that encompass each bay and other obstacles within the facility, [an]other extinguisher would need to be placed (based on the size of this extinguisher) so that a person would not have to travel more than 30 feet.").

Accepting for present purposes the consultant's conclusion that there was a violation of the New Jersey Fire Code, does that

---

[saw] one [fire extinguisher] . . . [in the] middle bay."  Lopez Dep. at 39:9-40:2.  Per the Plaintiff's expert: "Video evidence shows . . . one fire extinguisher was in the facility."  Miller Report at 3.  Per the Shop Owner's deposition: "There was one [fire extinguisher] in the office and [there were] a couple hanging on the wall. . . . [T]hey're spread out all through the shop[.]"  Santiago Dep. at 24:14-24.  Second, note that the Plaintiff points to interview notes taken by his investigator, made about two months after the incident, which are said to reflect that the Shop Owner told the investigator that he (the Shop Owner) "did not have a fire extinguisher in the shop."  Plaintiff's Motion, Exhibit C (Statement of Alex Santiago).  But the notes cannot be considered here as substantive evidence that there was no fire extinguisher.  They are plainly hearsay, and the Plaintiff points to no potentially applicable exception to the hearsay rule.  See generally Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999); Vecchio v. DeLuca, 2010 WL 3303826, at *4 (W.D. Pa. Aug. 20, 2010); King v. City of New Kensington, 2008 WL 4492503, at *12 (W.D. Pa. Sept. 30, 2008), as amended (Oct. 3, 2008).

constitute an intentional wrong under the New Jersey Workmen's Compensation Act?

To answer this question, the parties have not cited any relevant fire code cases decided by the New Jersey Supreme Court, and the Court has not located any.

But New Jersey courts have often considered the more general question of whether and when violations of workplace safety laws count as an intentional wrong.  Those courts have routinely held that, standing alone, violations of workplace safety laws are not enough.

As one New Jersey appellate court has put it:

> [I]n addition to violations of safety regulations or failure to follow good safety practice, an intentional wrong <u>must be accompanied by something more</u>, typically deception, affirmative acts that defeat safety devices, or a willful failure to remedy past violations.

<u>Jarosz</u>, 2013 WL 5268926 at *6 (emphasis added).

This approach is closely consistent with the New Jersey Supreme Court's cases in this area, which emphasize that a violation of a safety statute is "one factor among the totality of circumstances to be considered[.]"[13] <u>Van Dunk</u>, 210 N.J. at 469; see also <u>Laidlow</u>, 170 N.J. at 622-23 (holding that safety violation added up to an "intentional wrong" but emphasizing that "[o]ur holding is not to be understood as establishing a <u>per se</u> rule that an employer's conduct equates with an 'intentional wrong' within the meaning of [the statute] whenever that employer . . . commits [an] . . . OSHA violation").

The Court predicts that the New Jersey Supreme Court would hold that fire code violations are like other safety code violations: standing alone, in the absence of other relevant factors,[14] fire code violations do not count as intentional wrongs for the

---

[13]  Per the Supreme Court, additional "factor[s]" have included: "the employer's affirmative action to remove a safety device from a machine, prior OSHA citations, deliberate deceit regarding the condition of the workplace, machine, . . . , knowledge of prior injury or accidents, and previous complaints from employees." <u>Id</u>. at 471.

[14]  See, <u>e.g.</u>, footnote 13.

purposes of the New Jersey Workmen's Compensation Act.  They "must be accompanied by something more." Jarosz, 2013 WL 5268926, at *6.[15]

Why this prediction?

First, because it is consistent with the New Jersey Supreme Court cases in this area --- which, under the umbrella of somewhat different verbal formulations, use the same "something more" approach in a variety of distinct safety-focused contexts. See Van Dunk, 210 N.J. 449 (trench collapse at construction site); Laidlow, 170 N.J. 602 (rolling mill with safety guard removed); Millison, 101 N.J. 161 (asbestos exposure at chemical plants). If these somewhat disparate safety-related contexts are treated in the same way, there is no reason to think the safety-related context here, involving fire, should be treated differently.

Second, applying the "something more" approach to fire code cases such as this one follows from the narrow method the New Jersey Supreme Court has taken to deciding what counts as an intentional wrong.  See Part II.C.2 (describing this approach, rooted in the idea that the Act is "remedial social legislation," Fitzgerald, 186 N.J. at 30, that must therefore be construed in a way that favors broad coverage under the Act, not exclusion from it); see generally Schulman, 2023 WL 4539476 at *4 n.4 ("[I]n the Erie-prediction context federal courts must generally interpret state law using the interpretive methods used by the courts of the relevant state itself.").

Third and finally, in a case that focuses on fire safety issues, at least one New Jersey appellate court has taken the "something more" approach.  See Jarosz, 2013 WL 5268926 at *6; see generally Schulman, 2023 WL 4539476, at *2 (quoting Robinson v. Jiffy Exec. Limousine Co., 4 F.3d 237, 242 (3d Cir. 1993) ("[W]e must give serious consideration to the decisions of the

---

[15]  The fire code violations here were not as severe or pervasive as they might be in other cases.  The expert report indicated that there was only one fire extinguisher where there needed to be at least one more.  See Miller Report at 3.  The Court need not, and therefore does not, consider whether more extensive fire code violations can count as an intentional act without other factors being present.

intermediate appellate courts in ascertaining and applying state law[.]").

In short: New Jersey law sets a high standard for inferring an intentional wrong from violations of safety standards, and that includes, the Court predicts, violations of fire codes.

Here, that high standard has not been met.

The "something more" that "must" be part of the mix, Jarosz, 2013 WL 5268926, at *6, is not present here. There is no proffered evidence, for example, of awareness that one fire extinguisher was not enough; of prior fires; of prior safety complaints; of failed inspections; of other safety issues; of deception of safety regulators; or of a generally casual or reckless culture with respect to workplace safety.

Any of this might have started to shift the balance. But no evidence along these lines has brought to the Court's attention.

Accordingly, the Court concludes that the evidence does not support the conclusion that by having only one fire extinguisher the Defendants acted with knowledge of "substantial certainty of injury or death," Van Dunk, 210 N.J. at 472, and that is the standard for an intentional wrong established by the New Jersey courts.

## IV.  Conclusion

As set out above, the undisputed evidence does not support the conclusion that an intentional wrong was committed here.

Therefore, the Plaintiff's remedy must be through the New Jersey Workmen's Compensation Act, not this tort suit, and its motion for summary judgment must be denied.

This would ordinarily imply that the Defendants' motion must be granted. And as to one of the Defendants, Alex Corozal a/k/a Alex Santiago, the Shop Owner, the motion is indeed granted.

But there is a complexity here.

The precise identity of the Auto Repair Shop is subject to conflicting evidence. Whether the Shop is Corozal Auto Repair, Inc., one of the named Defendants, or A&A Corozal Auto Repair, LLC, another one of the named Defendants, is a subject of factual dispute. See Plaintiff's Statement of Facts ¶¶ 1-2 (stating Plaintiff was employed by Corozal Auto Repair, Inc.);

Defendants' Statement of Facts ¶ 1 (stating Plaintiff was employed by A&A Corozal Auto Repair LLC).  The Auto Repair Shop is all-but certainly entitled to summary judgment in light of what has been discussed here.  But for now, there is a material factual dispute as to who the Auto Repair Shop is.  This precludes granting a summary judgment motion on behalf of A&A Corozal Auto Repair, LLC, the Defendant that has moved for it.[16]

\*       \*       \*

It is on this 2nd day of May, 2024  **SO ORDERED**.

Michael E. Farbiarz, U.S.D.J.

---

[16]  The Court will today enter an order setting a schedule for the parties to address this issue, to the extent they wish to.